UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAWN VEGA,

        Plaintiff,

v.

**MEMORANDUM & ORDER**
**06-CV-3887 (NGG) (SMG)**

NORWEGIAN CRUISE LINES,

        Defendant.
-----------------------------------------------------------X
GARAUFIS, United States District Judge.

This action arises from personal injuries sustained by the Plaintiff, Dawn Vega ("Plaintiff" or "Vega"), as a result of an accident that occurred while she was a passenger in April 2006 on board the M/V Norwegian Spirit ("Spirit"), an ocean cruise ship operated by the defendant, Norwegian Cruise Lines ("Defendant" or "NCL"). Plaintiff initially brought suit in New York Supreme Court, Richmond County, Index No. 102083/06, and Defendant removed the case to this court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

Currently before the court is Defendant's motion to enforce the forum-selection clause and transfer venue to the Southern District of Florida or, in the alternative, to dismiss the case. For the reasons set forth below, I find the forum-selection clause to be valid and binding and thus hereby GRANT Defendant's motion to transfer venue to the Southern District of Florida and DENY Defendant's motion to dismiss.

### I. Factual Background

The following facts are alleged in Plaintiff's complaint and attested to in affidavits

accompanying her motion papers. Vega is a 42-year-old single parent, who lives in New York with her two daughters and granddaughter. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Enforce Forum-Selection Clause and Dismiss or Transfer Action ("Pl.'s Mem."), at 1 & Ex. B ¶¶ 1, 2.) After seeing an online promotion for a cruise aboard the Spirit, she purchased tickets for herself and her daughter. (Id. at Ex. B ¶¶ 4.) Vega purchased her tickets over the telephone through a travel agent. (Id. at 1 & Ex. A.) At the time of purchase, Vega was not informed of any specific terms that her passenger ticket carried with it, including any related to forum selection. (Id. at 1 & Ex. B ¶ 6.)

The Spirit cruise ship embarked and disembarked at the Spirit of New York Passenger Terminal, located at 711 Twelfth Avenue in New York County. The cruise commenced on April 23, 2006, (id. at 1), making stops in Florida and the Bahamas, and returned on April 30, 2006. (Defendant's Memorandum of Law in Support of Motion to Enforce Forum-Selection Clause and Dismiss or Transfer Action ("Def.'s Mem."), at 4). While aboard Spirit, on either April 23, 2006 or April 24, 2006, Vega broke her fibula, the outer and narrower of the two bones in her lower leg. (Pl.'s Mem. at 1 & Def.'s Mem. at 5.)

According to Defendant, in agreeing to be a passenger on the Spirit cruise and prior to boarding the ship, Vega entered into a passenger ticket contract ("contract") with NCL, the forum-selection clause of which is the subject of the instant motion by Defendant. (Def.'s Mem. at 2.) Defendant alleges that it sent the contract electronically to Vega's travel agent, Vacations to Go ("VTG") in Houston, Texas, and included with the contract a copy of the cruise ticket, which was to be turned in upon boarding the Spirit, and Vega was to retain a passenger copy, a "virtually identical" version of the cruise ticket. (Id.) In addition, Defendant claims that the

2

email from Defendant to VTG included travel reminders, a travel itinerary, transportation vouchers, and other general cruise information. (Id. at 2.) VTG received this email twenty days prior to the Spirit voyage. (Id. at 3.) The parties do not contest that Vega thereafter received these documents from her travel agency. Indeed, Defendant notes that Vega produced both the passenger ticket contract and passenger copy during discovery, specifically including the page of the passenger ticket contract sent to her. (Id. at 2 & Defendant's Reply Memorandum of Law in Support of Motion to Enforce Forum-Selection Clause and Dismiss or Transfer Action ("Def.'s Reply Mem."), at 2.) Vega further acknowledges receiving her tickets via email, (Pl.'s Mem. at 1), although she does state that "[a]t no time did anyone discuss with me that if I was injured I had to bring an action in Florida, not before I ordered the ticket or after I received them." (Id. at Ex. B ¶ 6.)

According to Defendant, the cruise ticket, passenger copy, and passenger ticket contract, to which Vega's attention was directed, all contain certain warnings related to her rights and obligations:

(1) The passenger copy contains a warning on its face advising passengers to read the terms and conditions of the passenger ticket contract. (Def.'s Mem. at 3.)

(2) The cruise ticket, which Vega turned in upon boarding the Spirit, warns: "**IMPORTANT NOTICE**: The Passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully." (Id. at 3) (emphasis in original). Defendant notes that these warnings were "conspicuous" and "in clear black lettering." (Id.)

(3) The passenger ticket contract provides the terms and conditions of the contract. (Id.)

3

The following warning appears in "clear black lettering against a white background and surrounded by a bold dark black border":

> "**IMPORTANT NOTICE**: PASSENGERS ARE ADVISED TO CAREFULLY READ THE TERMS AND CONDITIONS OF THE PASSENGER TICKET CONTRACT SET FORTH BELOW WHICH AFFECT YOUR LEGAL RIGHTS AND ARE BINDING. ACCEPTANCE OR USE OF THIS CONTRACT SHALL CONSTITUTE THE AGREEMENT OF PASSENGER TO THESE TERMS AND CONDITIONS."

(Id. at 3-4) (emphasis and capitalization in original). Twenty-three clauses follow this warning, including clause twenty two, which controls the issue of forum selection:

> Except as otherwise specified herein, this contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county.

(Id. at 2.)

## II. Discussion

### A. Governing Law

A ticket for a cruise ship constitutes a maritime contract between carrier and passenger and is governed by admiralty. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 590, 111 S. Ct. 1522, 1525 (1991); The Moses Taylor, 4 Wall. 411, 71 U.S. 411, 427, 18 L.Ed. 397 (1867); Vavoules v. Kloster Cruise Ltd., 822 F.Supp. 979, 982 (E.D.N.Y.1993) (Weinstein, J.) (compiling cases); Lurie v. Norwegian Cruise Lines, Ltd., 305 F.Supp.2d 352, 356 (S.D.N.Y. 2004) ("a passenger ticket contract is a maritime contract and therefore governed by the general

4

maritime law of the United States").

**B.     Forum Selection Clause**

**A.     Reasonable Communication**

The Second Circuit has made clear that "the legal effect of a forum-selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff." Effron v. Sun Line Cruises, Inc., 67 F.3d 7 (2d Cir. 1995) (citing Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 45-46 (2d Cir.1990) (per curiam)). I am satisfied that Vega's ticket adequately conveyed the importance of the terms of the contract of passage.

The forum-selection clause – that all suits against Defendant must be brought in the Southern District of Florida or, if that court lacks subject-matter jurisdiction, in a state court in Miami-Dade County, Florida – is stated in clear and unambiguous language on the passenger ticket contract, and both the passenger copy and cruise ticket contain specific and straightforward references to the terms and conditions of the passenger ticket contract. Vega's contention that, "[a]t no time did anyone discuss with me that if I was injured I had to bring an action in Florida, not before I ordered the ticket or after I received them," (Pl.'s Mem. at Ex. B ¶ 6), is immaterial since, by her own admission, Vega received the email containing the cruise ticket, (id. at 1), which not only made specific mention to the passenger ticket contract but was also accompanied by that passenger ticket contract. In addition, as part of the discovery process, Vega produced copies of the passenger ticket contract and passenger copy. (Def.'s Mem. at 3.) Since Vega indisputably received the written contract, that no one from NCL discussed it on the phone with her is beside the point. See, e.g., Sun Line Cruises, 67 F.3d at 9 (upholding provisions in passage contracts that were communicated in a similar manner); Spataro, 894 F.2d at 45-47 (holding that

5

a boxed warning on page five of a passenger ticket contract gave reasonable and sufficiently conspicuous notice to passengers that the contents of the three pages which followed it incorporated the contractual terms governing the parties' rights and liabilities); McQuillan v. "Italia" Societa Per Azione Di Navigazione, 386 F.Supp. 462, 465-66 (S.D.N.Y.1974), aff'd mem., 516 F.2d 896 (2d Cir.1975) (finding that the passage in the contract reasonably communicated the importance of the terms and conditions to the passenger and therefore they were incorporated into the contract); Kientzler v. Sun Line Greece Special Shipping Co., 779 F. Supp. 342, 345-46 (S.D.N.Y.1991) (holding the same). Furthermore, though Vega does not interpose such a defense, I decline to give weight to any argument that she may not have read the legal language on the documents she received. See, e.g., Lieb v. Royal Carribean Cruise Lines, Inc., 645 F. Supp. 232, 234 (S.D.N.Y. 1986) ("[T]he face of the passenger contract ticket contains a conspicuous notice directing the passenger's attention to the contractual claims contained on the inside. Under such circumstances, courts have uniformly held the passenger bound by the contractual terms contained in the contract, [even] despite the fact that the passenger may not have read the contract.") (citations omitted).

## B. Mandatory Venue Language

The Second Circuit held in John Boutari & Sons, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 11 F.3d 51, 52 (2d Cir. 1994), that "[t]he general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." (Citations omitted). The circuit court further wrote that "[o]f course if mandatory venue language is employed, the clause will be enforced." Id. at 53. See also Seward v. Devine,

888 F.2d 957, 962 (2d Cir. 1989) (proposition that court should not adopt interpretation that "would render the forum selection clause meaningless"); Weiss v. La Suisse, 69 F. Supp 449, 455 (S.D.N.Y. 1999) (holding that "[t]he key is whether the language can only be interpreted as providing for a mandatory and exclusive forum, or whether it can be construed as permitting suit in additional fora"). In interpreting Boutari, the Weiss court noted that "the Circuit all but ruled that a forum selection clause would not be enforced unless it contained language on the order of, 'All disputes must be brought in a particular forum and may not be maintained anywhere else.'" I am similarly bound and find that the passenger ticket contract between Vega and NCL plainly evinces the parties' intent to make the venue language mandatory rather than permissive. Indeed, the passenger ticket contract specifically notes that the venue shall be limited to the Southern District of Florida or state court in Miami-Dade County "to the exclusion of the Courts of any other country, state, city or county." (Def.'s Mem. at 4.)

## C. Overall Reasonableness and Justness

I find this forum-selection clause to be fair, just, and reasonable under the circumstances. Although courts should enforce contracts that are entered into freely "because the financial effect of forum selection and choice of law clauses likely will be reflected in the value of the contract as a whole," Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing Carnival Cruise Lines, 499 U.S. at 592, 111 S. Ct. at 1527), this presumptive validity of a forum-selection clause can be overcome by a clear showing of unreasonableness. As the Roby court held:

> The Supreme Court has construed this exception narrowly: forum selection and choice of law clauses are "unreasonable" (1) if their incorporation into the agreement was the result of fraud or overreaching, (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum, (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or (4) if the

7

clauses contravene a strong public policy of the forum state.

Roby, 996 F.2d 1353, 1363 (citations omitted).

As to the first factor, Vega has not alleged or produced any evidence that the passenger ticket contract or the forum-selection clause's incorporation into the contract was the result of fraud or overreaching, and I do not find otherwise. As to the second and third factors, although I am aware that litigating this case in Florida will impose certain hardships on Vega, particularly given her means, I decline to find that the Southern District of Florida is an inconvenient or fundamentally unfair forum as a matter of law. In Carnival Cruise Lines, the Supreme Court specifically noted that Florida was not a remote alien forum for the purpose of litigating cruise ship passenger ticket contracts. 499 U.S. at 595. The Court wrote:

> [T]here is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims. Any suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports. Similarly, there is no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity. In the case before us, therefore, we conclude that the Court of Appeals erred in refusing to enforce the forum-selection clause.

Id. Indeed, "[i]n recent years, the courts of this circuit have emphasized that '[a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.'" Effron, 67 F.3d at 10 (citing Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Similarly, although Vega enumerates the ways in which Defendant has close ties to New York, (Pl.'s Mem. at 1-3 & Exs. A, C-G), VCL indisputably maintains its corporate offices within the Southern District of Florida and operates

8

cruises that call at approximately 140 different ports on four continents. (Def.'s Mem. at 4.) See Carnival Cruise Lines, 499 U.S. 585, 593-94 (noting that "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora"). Finally, on this point, by arguing for transfer in addition to dismissal, Vega has implicitly conceded that litigation in Florida will not deprive her of her day in court. See Pl.'s Mem. at 6 (noting that "[t]ransfer of the action to the Southern District of Florida . . . is preferable to dismissal and authorized here").

## III. Conclusion

For the reasons set forth above, Defendant's motion to transfer venue to the Southern District of Florida is GRANTED. Defendant's motion to dismiss the case is DENIED.

SO ORDERED.

Dated: June 18, 2007
Brooklyn, N.Y.

/signed/
Nicholas G. Garaufis
United States District Judge